UNITED STATES of America, Appellee,

v.

Donald Lee SMITH, Appellant.

UNITED STATES of America, Appellee,

v.

William Andrew VOEGE, Appellant.

Nos. 71–1641, 71–1676.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1972.

Decided July 12, 1972.

James M. Martin, St. Louis, Mo., for appellants.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Defendants Smith[1] and Voege were indicted and tried jointly for violating 18 U.S.C. § 2113(a) by burglarizing the Washington Federal Savings & Loan Association in St. Louis, Missouri. Both men were convicted. The convictions rested upon the testimony of Arthur Shelton, who was also the principal witness in Nos. 71–1592 and 71–1609, decided this date.

Smith raises the same challenge to Shelton's credibility that he raised in No. 71–1592: that Shelton's testimony was so incredible as to be insufficient to sustain the conviction. For the reasons stated in our opinion in Nos. 71–1592 and 71–1609, we reject this challenge.

Voege contends that the court erroneously refused to admit evidence concerning Shelton's use of drugs. He relies on Chicago & N. W. Ry. Co. v. McKenna, 74 F.2d 155 (8th Cir. 1929). In that case, this Court held that the trial court erroneously excluded evidence of the witness's drug addiction, stating:

> " * * * [T]he defendants should have been permitted to show in cross-examination of appellee or otherwise that [a government witness] was an habitual user of drugs and to develop by competent evidence the effect which continued addiction might have upon one's mental faculties, irrespective of whether he was under the immediate influence of the drug at the time of the occurrence. * * * We think it had a direct bearing upon his credibility * * *."

74 F.2d at 158–159.

It has also been recognized, however, that

> " * * * [t]he issue of narcotics use is one that may properly be handled with some sensitivity lest it result in undue and unnecessary prejudice. * * * Prejudice may result if questions asked for the limited purpose of testing, say, opportunity to observe, are permitted to generate a hos-

---

1. Smith is also the defendant in No. 71–1592, decided this date.

tility based on the general odium of narcotics use.

"A judge may not fairly block all probing of an issue like narcotics use by the prosecution's sole eye witness to a murder. On the other hand, * * * the matter of drug addiction, which involves social transgression and the possibility of illegal conduct, is properly approached with awareness of the potential for prejudice of the jury. * * *"

United States v. Kearney, 136 U.S.App. D.C. 328, 420 F.2d 170 (1969).

With these cases in mind, we examine the record.

Shelton was extensively cross-examined, and he consistently denied that he used narcotics. The court did not unduly limit this cross-examination.

■ The defendants called Sandra Cook. She testified that she did not know Shelton at the time of the burglary. She was then asked whether Shelton had told her that he was using drugs at or about the time the burglary was committed. An objection to this question was properly made and sustained on hearsay grounds. Cook was then asked whether Shelton was using drugs in July of 1970, when he gave a statement implicating the defendants to the F.B.I. The trial court sustained an objection to this question on the ground that the government was attempting to prove the defendants' guilt by relying on Shelton's present independent recollection of what occurred rather than his statement to the F.B.I. While it would have been better for the court to permit further inquiry along this line, defense counsel made no offer of proof to show that Shelton was an addict whose mental faculties were impaired by drug use, an offer which should have been made if the record were to be preserved on appeal.

Finally, a second defense witness, Tony Banks, was permitted to testify that he was an acquaintance of Shelton and that he had seen Shelton use drugs on several occasions on or about the time of the burglary. The government made an objection to this testimony, but only after the witness had answered. No motion to strike was made, and the testimony remained in the record to be considered by the jury. Banks was then asked whether Shelton was using drugs in July of 1970. The court sustained an objection to this question, and Banks' affirmative answer, which had been made before the objection could be lodged, was stricken. Here again, it would have been better had the trial court permitted this answer to stand; but no offer of proof was made by defense counsel. Finally, Banks was asked whether Shelton had used drugs on the day prior to trial, and he did not answer the question. For some reason, the competent and experienced counsel representing Smith again made no attempt to pursue this questioning.

■ In view of counsel's failure to make offers of proof on these points, we are not in a position to say that the exclusion of this testimony by the court was error, since the significance of the excluded evidence is not apparent. Hawkins v. Missouri Pac. R. Co., 188 F. 2d 348 (8th Cir. 1951); Moss v. Hornig, 314 F.2d 89 (2nd Cir. 1963); Rule 43(c), Fed.R.Civ.P. We cannot say that the court's ruling was erroneous particularly where, as here, we doubt that the ruling had a substantial influence upon the verdict. Model Code of Evidence rule 7 (1942). It is apparent that, while the defendants may have had evidence that Shelton used narcotics in the period from March 5, 1969, to the date of the trial, they had no evidence establishing that he was an habitual user whose faculties were dulled and whose testimony was, therefore, suspect. The record is otherwise replete with derogatory information about Shelton and it is highly doubtful that his credibility could have been more seriously undermined than it was.

There is no merit in the remaining contentions.

■ Smith asserts that the court erred in restricting the cross-examina-

tion of Shelton concerning his refusal to talk to the F.B.I. about his association with other admitted burglars. Defense counsel clearly established on cross-examination that Shelton associated with known criminals and that Shelton himself had an extensive criminal record. We do not see the relevance of showing that he had refused to discuss those associations with the F.B.I.

Both defendants argue that the court should have permitted cross-examination into prior admissions of criminal activity by Shelton.[2] Since Shelton's criminal record and associations were fully exposed to the jury, any evidence of admissions of additional criminal activity would merely have been cumulative.

The court's rulings on these points were not, therefore, erroneous, and the convictions are affirmed.

---

2. The defendants attempted to get into evidence the fact that in Nos. 71–1592 and 71–1609, which was tried the day prior to this case, Shelton had stated that he had seen about twenty-five safes peeled, and that he had participated in the peeling of safes. (Peeling is a method for breaking into a safe.)