J-S46009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WESLEY P. AMY | |
| Appellant | No. 1813 MDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0002090-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WESLEY P. AMY | |
| Appellant | No. 1814 MDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000658-2015

BEFORE:  BOWES, J., OLSON, J., AND STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                **FILED AUGUST 17, 2017**

Wesley P. Amy appeals from the aggregate judgment of sentence of

two to four years incarceration followed by four years of probation, which

was imposed after he was convicted of, *inter alia*, dissemination of obscene

_____

* Former Justice specially assigned to the Superior Court.

materials to minors, attempted unlawful contact with a minor, and attempted sexual abuse of children. We affirm.

Appellant's charges were filed at two separate docket numbers and stem from conduct involving three different minors. The cases were consolidated for trial. In the instant appeal, Appellant challenges only those convictions related to the youngest of the three victims, L.W. However, we briefly describe Appellant's interaction with all three minors.

In the fall of 2013, the State College Area High School ("SCAHS") employed Appellant to teach computer networking courses in its vocational program. Two minor female students, S.Z. and L.W., were enrolled in Appellant's course and sat in the back row of his classroom. In November, another minor female student, L.P., began to unofficially attend Appellant's class instead of study hall with Appellant's permission. Eventually, Appellant encouraged her to enroll, promising that she would pass the course.

Throughout the school year, Appellant sat in the back of the classroom and talked to the girls who were the only girls in the class. He joined their discussions about school, boys, and anime, a Japanese form of animated film or television, as if he were a peer. Appellant sought access to L.W.'s and L.P.'s cellphones on multiple occasions. He asked them why they locked their cell phones, suggested that they must have nude photos on their cell phones, and asked to access them.

Appellant's inappropriate conduct did not stop at school. He became friends with all three girls on Facebook and communicated with two of them, L.W. and S.Z., through private messaging. L.W. was the target of most of Appellant's on-line activity. On November 25, 2013, Appellant sent L.W. a link to a photograph of a young woman or teenager performing oral sex on a man. After a three-minute delay, Appellant sent a message indicating that the link was hijacked and he had not intended to send the pornographic material. He told L.W. not to click the link, unless she wanted to be shocked. He engaged L.W. in an extensive conversation in the early morning of December 3, 2013, that continued into the evening. The conversation began with school-related topics, but near midday, Appellant suggested that his "dares" would "shock" L.W. and "haunt [her] dreams." Commonwealth's Exhibit 1. This discussion included comments from Appellant regarding pornography, including specific mention of Bible Black, a pornographic anime.[1] Appellant and L.W. discussed her sex life, and he solicited naked photographs from her. Specifically, Appellant inquired about L.W.'s "sexting pictures" and requested she send him pictures in a private message. *Id*. When L.W. refused, Appellant said "you get an F." *Id*. Then,

_____

[1] Bible Black is a pornographic anime based on an erotic video game, and it places female students at an academy in graphic sexual situations, including bondage and rape. Commonwealth Exhibit 14.

Appellant insinuated he would be looking at pornography and waiting for L.W. to send him a nude photograph.

In January, Appellant implied to L.W. that he could change her grade, but that there was not any class work she could do. Instead, L.W. had to "motivate him" by midnight to improve her C+ to an A. *Id*. On April 24, 2014, Appellant requested pictures after L.W. got out of the shower, saying, "pictures or it didn't happen." *Id*. On April 25, 2014, he told her to unlock her phone so that he could see pictures of her. Despite Appellant's continued insistence, L.W. never sent him any nude or sexually suggestive photographs. Appellant's last conversation with L.W. occurred on April 28, 2014. He then removed L.W. and the other girls from his Facebook friends list.

The authorities discovered Appellant's conduct with respect to L.W. through a series of events involving L.P. In late April 2014, Appellant placed a flash drive labeled "Plan B" on L.P.'s desk. Initially, in front of all three girls, Appellant claimed he did not know about the flash drive. However, once Appellant was alone with L.P., he told her to put naked pictures on the flash drive as an alternative to taking the final exam. On May 8, 2014, L.P. discussed the event with S.Z. S.Z. subsequently informed her mother and her mother, in turn, reported Appellant's conduct to the administration, which notified the State College Police Department.

On the following Monday, May 14, 2014, Appellant was suspended from his position at SCAHS pending a criminal investigation. On November 18, 2014, Appellant was charged with dissemination of obscene materials to a minor with respect to L.W. and three counts of corruption of minors, one count with respect to each girl. On April 6, 2015, the additional charges of attempted sexual abuse of children and attempted unlawful contact with a minor, both with respect to L.W., were filed. The two dockets were consolidated on May 8, 2015.

On October 22, 2015, the case proceeded to trial. At trial, Appellant testified on his own behalf. In his testimony, he offered explanations as to why the sexually explicit link was not "knowingly" sent and contested that his solicitations of nude photographs were made "jokingly." N.T., 10/22/15, at 355, 397. A jury convicted Appellant of all counts, and he received the aforementioned sentence. Appellant filed a timely post-sentence motion on May 31, 2016.[2] On September 19, 2016, the trial court requested briefs on the motion and extended the court's deadline to decide the motion by thirty days. Appellant's post-sentence motion was denied by operation of law pursuant to Pa.R.Crim.P. 720 (B)(3) on October 31, 2016.

_____

[2] Appellant was sentenced on May 20, 2016. The tenth day after sentencing, May 30, 2016, was Memorial Day, and thus, Appellant timely filed on the next available business day, May 31, 2016.

On November 3, 2016, Appellant filed this timely appeal. He filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court issued its Pa.R.A.P. 1925(a) opinion. On appeal, Appellant raises the following issues for our review:

> I. Did the trial court err in denying Appellant's request for a criminal attempt-renunciation defense jury instruction, Pennsylvania Standard Jury Instruction 12.901C?
>
> II. Did the trial court err by denying Appellant's motion for judgment of acquittal on Centre County Criminal Information No. CP-14-CR-2090-2014, count 1, obscene and other sexual materials and performances - dissemination to minors, and in denying to instruct the jury with a binding instruction on this count . . . in that the Commonwealth did not prove beyond a reasonable doubt that Appellant acted knowingly when he sent the tinyurl [3] link?

Appellant's brief at 11 (unnecessary capitalization omitted and footnote added).

Appellant's first issue is a challenge to the trial court's refusal to give a requested jury instruction to the attempt charges. Specifically, he argues that the trial court erred when it denied his requested jury instruction regarding a renunciation defense to the attempted unlawful contact with a minor and attempted sexual abuse of children where he presented evidence that he ceased Facebook activity on April 28, 2014.

_____

[3] The tinyurl link refers to the link to the pornographic picture that Appellant sent to L.W. on November 25, 2013.

Our Supreme Court has articulated the relevant standard of review as follows:

> In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law. Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record.

*Commonwealth v. Demarco*, 809 A.2d 256, 260-61 (Pa. 2002) (citations omitted).

The evidence supporting such an instruction may be gleaned from a defendant as a part of his case, from the evidence presented by the Commonwealth in its case against him, or in his cross-examination of the Commonwealth's witnesses. *Id*. at 261 n.6. However, the trial court is not required to provide legal instructions that cannot rationally be applied to the facts adduced at trial. *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014). Thus, a defendant must establish that the evidence presented at trial would reasonably support a verdict based on the desired renunciation instruction. *Id*.

Renunciation is an affirmative defense to the charge of criminal attempt. The elements of criminal attempt are:

> (1) an intent to commit a specific crime; and (2) any act constituting a substantial step toward the commission of that crime. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The defendant need

> not actually be in the process of the crime when arrested in order to be guilty of criminal attempt.

***Commonwealth v. Zingarelli***, 839 A.2d 1064, 1069 (Pa.Super. 2003)

(internal citations and quotations omitted).

It is a defense to criminal attempt when a defendant demonstrates that,

> under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

18 Pa.C.S. § 901(c)(1). Put simply, renunciation "requires a showing that the defendant avoided the commission of the crime attempted by abandoning his criminal effort." ***Zingarelli***, ***supra***, at 1072.

We examine each of the attempt crimes for which Appellant was charged in order to discern whether sufficient evidence was offered to permit a jury finding that Appellant fully abandoned his criminal attempt. In the absence of such evidence, the instruction was not warranted.

Regarding the first charge, an individual commits the offense of unlawful contact with a minor when "he is intentionally in contact with a minor . . . for the purpose of engaging in . . . sexual abuse of children as defined in section 6312." 18 Pa.C.S. § 6318. Section 6312 prohibits, in pertinent part, causing or knowingly permitting a minor to produce photography of nudity for the purposes of sexual gratification. Hence, the

attempted crime of unlawful contact with a minor required the Commonwealth to prove Appellant specifically intended to contact a minor for the purposes of producing or acquiring nude photographs.

Appellant's primary support for a renunciation defense to his attempt charges was the uncontested fact that he ceased contacting L.W. via Facebook on April 28, 2014. Appellant's brief at 25. Additionally, he relied on his own testimony alleging that he decided to cease his inappropriate discussions with L.W. *Id*. at 24-25.

We note that 18 Pa.C.S. § 6318, unlawful contact with a minor, does not require Appellant to commit the underlying enumerated offense. ***Commonwealth v. Reed***, 9 A.3d 1138, 1146 (Pa. 2010). Appellant has committed the crime once he has **contacted** the minor **for the purpose** of causing or knowingly permitting a minor to photograph or film a sexual act. ***Id***.; ***see*** 18 Pa.C.S. § 6312(b). Thus, Appellant needed to provide evidence showing complete renunciation of any substantial step he took towards the crime of contacting a minor for the purpose of acquiring sexually explicit photographs. 18 Pa.C.S. § 6318; ***See Commonwealth v. Gilliam***, 417 A.2d 1203, 1205 (Pa.Super. 1980) (discussing the substantial step test).

While the Commonwealth charged Appellant with the inchoate offense of criminal attempt, Appellant's substantial step was contacting L.W. for the purpose of acquiring nude photographs. He fully completed those actions before he stopped communicating with L.W., who repeatedly refused to

comply with Appellant's demands. Thus, Appellant did not show that he "avoided the commission of the crime attempted by abandoning his criminal effort." *Zingarelli, supra* at 1072. With respect to attempted unlawful contact with a minor, Appellant's criminal effort was complete when he contacted L.W. for the purpose of soliciting nude photographs. 18 Pa.C.S. §§ 6318, 6312(b). Thus, the trial court did not abuse its discretion or commit an error of law when it refused to give the renunciation instruction as to the offense of attempted unlawful contact with a minor.

Appellant's second criminal attempt charge stems from similar, but distinct conduct. The underlying crime of sexual abuse of children requires causing or knowingly permitting "a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act . . . if [Appellant] knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed." 18 Pa.C.S. § 6312(b).[4] Thus, to qualify for a renunciation jury instruction on the second charge, Appellant needed to adduce evidence reasonably showing that he completely and voluntarily renounced his intent to procure sexually explicit photos from L.W. in such a way as to avoid the actual production of such photos. 18 Pa.C.S. §§ 901, 6318; *Zingarelli*, *supra* at 1072. In the

_____

[4] This attempt charge focused on the actual attempt to produce the photographs, as opposed to the attempt to contact a minor for the purpose of producing the photographs.

- 10 -

alternative, Appellant needed to show that he took "further and affirmative steps which prevented the commission" of the crime. 18 Pa.C.S. § 901(c).

We find that there was no evidence in the record warranting a renunciation instruction. Appellant induced L.W. to produce sexually explicit photographs when he solicited the transfer of nude images from L.W. Appellant's renunciation, therefore, had to be sufficient to prevent the production of a nude photograph by the minor, in this case L.W. However, L.W. could have created a nude photograph, induced by Appellant's prior substantial steps, after Appellant ceased his Facebook activities. Thus, Appellant's purported change-of-heart was not enough to prevent the crime and entitle Appellant to a renunciation defense. Appellant's act of terminating on-line contact was merely passive and not an active step tending to prevent the commission of the crime. Appellant needed to take further steps to demonstrate to L.W. that he had abandoned his efforts.

However, Appellant never expressed to L.W., before or after April 28, 2014, that he no longer desired such material or that such requests were inappropriate, or otherwise provided evidence that his abandonment prevented the commission of the underlying crime. Indeed, the only evidence regarding activity after April 28, 2014, was provided by the Commonwealth. That proof indicated that Appellant continued to seek nude

photographs from the girls in person while in the classroom.[5]   Thus, Appellant did not present or point to evidence at trial to reasonably support a renunciation defense, and thus, we affirm the trial court's denial of such an instruction.

Appellant's next claim is a challenge to the sufficiency and weight of the evidence supporting his conviction for dissemination to minors.  We will first distinguish weight and sufficiency claims, as Appellant conflates the two distinct concepts.  A sufficiency of the evidence claim posits that the evidence introduced by the Commonwealth does not establish each element of the pertinent crime.  *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).  A weight claim concedes that there is sufficient evidence, but that some facts so outweigh the others that to ignore them or accord them equal weight would be a miscarriage of justice.  *Id*. at 751-52.  A successful challenge to the weight of the evidence results in a new trial, while a successful challenge to the sufficiency of the evidence results in discharge. *Id*.  Thus, we first address Appellant's sufficiency challenge.

Whether the evidence was sufficient to support the conviction presents a question of law; our standard of review is de novo and our scope of review is plenary.  *Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa.Super. 2016)

---

[5]  This included the "Plan B" flash drive which led to the investigation into Appellant's activities.

(citation omitted). We are guided by the following well-established standard:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. It is well-established that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence and the jury, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 514 (Pa. 2017) (quotation marks and citations omitted).

Appellant limits his challenge to the sufficiency of the evidence that he "knowingly" disseminated. The Commonwealth must prove that Appellant "knowingly disseminat[ed] . . . explicitly sexual materials to a minor." 18 Pa.C.S. § 5903(c). Explicitly sexual materials is defined by statute, in pertinent part, as follows: "any picture, photograph . . . or similar visual representation or image of a person or part of the human body which depicts nudity [or] sexual conduct, . . . and is harmful to minors." ***Id***.

Appellant concedes that he sent a link to L.W., a minor, of sexually explicit material.[6] Appellant sent the sexually explicit link to L.W. during a

---

[6] The link led to an image of a young woman or teenager engaging in oral sex.

*(Footnote Continued Next Page)*

conversation about fixing L.W.'s issues with her Netflix streaming. Appellant contemporaneously told L.W. that the link was "hijacked,"[7] told L.W. not to look at the link, and sent her a new link for downloading programs necessary to troubleshoot Netflix. Commonwealth Exhibit 1. In his testimony and brief, Appellant emphasized that the link was hijacked and, therefore, he could not have knowingly disseminated the sexually explicit material. Appellant's brief at 35.

However, the Commonwealth introduced evidence undermining the credibility of Appellant's testimony and his explanation for the link. First, Appellant waited three minutes before he explained his mistake to L.W., telling her not to click the link. Most tellingly, Appellant told L.W. not to look at the picture "unless you want a shock." (emphasis added). Commonwealth Exhibit 1. The fact finder was free to credit or discredit Appellant's testimony as it saw fit. Plainly, the evidence suffices, when viewed in the light most favorable to Commonwealth, to support Appellant's conviction for knowingly disseminating sexually explicit materials to L.W., a minor.

_(Footnote Continued)_ ───────────────

[7] At trial, Appellant explained that a malware virus or hacker can redirect a link so that the intended link sends the user to a different website. N.T., 10/22/15, at 355.

Next, we turn to Appellant's challenge to the weight of the evidence. This Court does not reexamine the underlying evidence when reviewing a weight of the evidence claim. *Commonwealth v. Konias*, 136 A.3d 1014, 1022. Rather, "we evaluate the trial court's exercise of discretion in resolving the challenge." *Id*. Thus, a weight of the evidence challenge must be first presented to the trial court in a post-sentence motion in order to be preserved. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012). Appellant submitted a post-trial motion challenging the weight of the evidence and, therefore, preserved the issue and we may examine his claim on its merits.

We give the utmost deference to the trial court's ruling on a weight claim because the trial judge heard and saw the evidence presented at trial. *Commonwealth v. Leatherby*, 116 A.3d 73, 82 (Pa.Super. 2015). Hence, we will not overrule a trial court's weight determination unless it is so contrary to the evidence as to shock one's sense of justice. *Konias*, *supra*, at 1022.

In the instant case, Appellant contends that the fact finder accorded too little weight to his testimony regarding the hijacking of the tinyurl link. Thus, he contends the finding that he knowingly disseminated was against the weight of the evidence. However, Appellant fails to acknowledge that the jury was clearly entitled to weigh this testimony in the context of the other evidence adduced at trial. The jury's rejection of Appellant's testimony

did not shock the trial court's conscience and, hence, we find no abuse of discretion by the trial court. **Widmer**, **supra**, at 751-52.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2017